## AGREEMENT AND GENERAL RELEASE

Nu Life Med, LLC ("Nu Life") and **Tiffany Madison**, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Employee's Employment With Nu Life.** Employee's employment with Nu Life ended on or about March 12, 2015.

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, Nu Life agrees to pay to Employee a total of Eleven-Thousand, Five-Hundred and Twenty-Five Dollars ($11,525) and to pay to Barrett & Farahany, LLP a total of Eight-Thousand, Four-Hundred Seventy-Five Dollars ($8,475) according to the following schedule and breakdown:

   a. within ten (10) days after the Northern District of Georgia's approval of the Parties' Settlement Agreement, Nu Life will pay to: a) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Three Cents ($1,440.63) as wage income, less lawful deductions; b) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Two Cents ($1,440.62) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP Two-Thousand, One-Hundred Eighteen Dollars and Seventy-Five Cents ($2,118.75) as non-wage income, to be reported as 1099 income.

   b. within forty (40) days after the Northern District of Georgia's approval of the Parties' Settlement Agreement, Nu Life will pay to: a) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Three Cents ($1,440.63) as wage income, less lawful deductions; b) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Two Cents ($1,440.62) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP Two-Thousand, One-Hundred Eighteen Dollars and Seventy-Five Cents ($2,118.75) as non-wage income, to be reported as 1099 income.

   c. within seventy (70) days after the Northern District of Georgia's approval of the Parties' Settlement Agreement, Nu Life will pay to: a) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Three Cents ($1,440.63) as wage income, less lawful deductions; b) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Two Cents ($1,440.62) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP Two-Thousand, One-Hundred Eighteen Dollars and Seventy-Five Cents ($2,118.75) as non-wage income, to be reported as 1099 income.

   d. within one hundred (100) days after the Northern District of Georgia's approval of the Parties' Settlement Agreement, Nu Life will pay to: a) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Three Cents ($1,440.63) as wage income, less lawful deductions; b) Employee One-Thousand, Four-Hundred Forty Dollars and Sixty-Two Cents ($1,440.62) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP Two-Thousand, One-Hundred Eighteen Dollars and Seventy-Five Cents ($2,118.75) as non-wage income, to be reported as 1099 income.

In consideration for the payments expressed above, Employee's counsel agrees to file a dismissal with prejudice of Civil Action No. 1:15-cv-00775-RWS within three (3) days of Nu Life's final settlement payments included in paragraph 2.d. above.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

4. **General and Mutual Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges Nu Life, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former Employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their Employee benefit plans and programs and their administrators and fiduciaries, as well as insurers (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

- The Fair Labor Standards Act ("FLSA");

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A.. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;
- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;
- The Georgia minimum wage, recordkeeping and payday statutes— O.C.G.A. §§ 34-4-3, 34-2-11 and 34-8-2;
- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;
- any other federal, state or local law, rule, regulation, or ordinance
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

Releasees knowingly and voluntarily release and forever discharge Employee and agents thereof, of and from any and all claims, known and unknown, asserted or unasserted, which the Releasees have or may have against Employee and agents thereof, as of the date of execution of this Agreement and General Release.

5. **Acknowledgments and Affirmations.** Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Nu Life other than Case 1:15-cv-00775-RWS pending in the United States District Court, Northern District of Georgia.

Nu Life affirms that it has not filed, caused to be filed, or is presently a party to any claim or counterclaim against Employee.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Nu Life, including information produced to Employee's counsel during confidential settlement negotiations and will continue to maintain the confidentiality of such information.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Nu Life or its officers, including any allegations of corporate fraud. Both Parties acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Employee agrees that if such an

administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

Employee shall not apply in the future for employment with Nu Life because of, among other things, irreconcilable differences with Nu Life.

Employee represents that she has not received Medicare benefits for the treatment of emotional distress in connection with her claims asserted against Nu Life. Employee further represents that, if she has received treatment through the Medicare program for any accident, occurrence, injury, illness, disease, loss, claim, demand, or damages, such treatment was unrelated to her claims asserted against Nu Life.

Employee hereby warrants and represents that she presently is not, nor has she ever been enrolled in Medicare Part A or Part B. Employee further represents that, if she has received treatment through the Medicare program for any accident, occurrence, injury, illness, disease, loss, claim, demand, or damages, such treatment was unrelated to her claims in the action designated 1:15-cv-00775-RWS. Further, Employee represents and warrants that she has no claim for Social Security Disability benefits nor is she appealing or re-filing for Social Security Disability benefits.

Employee agrees to indemnify and hold Nu Life and the other Releasees harmless from any claims of, or rights of recovery as a result of, any future payment which may be made by Medicare or any other entity for or on behalf of Employee for such future care. Employee agrees to hold harmless Nu Life and the other Releasees for any loss of Medicare benefits or Social Security benefits Employee may sustain as a result of this Agreement and General Release. In addition, Employee agrees to release as part of this Agreement and General Release any right to bring any possible future action under the Medicare Secondary Payer Statute against Employee and the other Releasees.

Employee has been apprised of her right to seek assistance from legal counsel of his choosing or directly from the Social Security Administration or other government agencies regarding the impact this Release may have on Employee's current or future entitlement to Social Security or other governmental benefits. Employee acknowledges that acceptance of these settlement funds may affect Employee's rights to other governmental benefits, insurance benefits, disability benefits, or pension benefits. Notwithstanding this possibility, Employee desires to enter into this Agreement and General Release to settle her claims against Employer according to the terms set forth in this Agreement and General Release.

6. **Non-Disparagement.** The parties agree that they shall not make any oral or written statements, or engage in conduct of any kind, that disparages, criticizes, defames, communicates any false, negative or misleading information about one another, or any matter relating to Employee's relationship with Nu Life, and/or, to the extent relevant, the circumstances surrounding Employee's lawsuit against Nu Life, or otherwise casts a negative characterization upon the other party. The parties further agree that they will not assist anyone else in doing so, or direct or encourage another to do so.

7. **Return of Property.** Employee agrees to return to Nu Life any patient files of Nu Life's that are in her possession, custody or control. Employee further agrees to return to Nu Life any emails in her possession, custody or control regarding any Nu Life patients. Employee further agrees to inform Nu Life of any information in her possession, custody and control to assist Nu Life in locating and/or restoring any potential files or emails deleted by Employee regarding Nu Life's patients.

8. **Governing Law and Interpretation.** This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

9. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

10. **Amendment.** This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

11. **Entire Agreement.** This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

Nu Life Med, LLC

By: *Tiffany Madison* (signature)
Tiffany Madison

Date: 4/15/15.

By: *James Hradecky* (signature)
James Hradecky
Chief Executive Officer

Date: 4/17/2015

4820-1872-4899, v. 2